IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | Case No. 2:21-cv-1063-RMG |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT ALAN JOSEPH LANG'S** |
| vs. | ) | **REPLY MEMORANDUM TO** |
| | ) | **STATE FARM'S MOTION FOR** |
| ALAN JOSEPH LANG AND MICHAEL PATTERSON, | ) | **PARTIAL SUMMARY JUDGMENT** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

  Defendant Alan Joseph Lang ("Lang") submits this memorandum in reply to plaintiff State Farm's Partial Motion for Summary Judgment. State Farm's legal position violates well-established South Carolina law. State Farm's recitation of relevant facts ignores the particularly egregious actions it has committed, and which are ongoing, throughout its handling of Lang's claim. This Court should decline State Farm's invitation to join it in supplanting the role of the factfinder as it pertains to an insurer's self-serving, unreasonable, and intentional decision to deny insurance benefits under the terms of a South Carolina consumer homeowner's policy – an invitation which State Farm has extended to this Court not merely before trial, but before the opportunity for meaningful discovery has been allowed to occur.

## BACKGROUND OF UNDERLYING CASE
### (*Michael J. Patterson v. Alan Joseph Lang*)

  On Saturday, April 13, 2019, at around 9:40 PM, Lang was involved in a disputed interaction with the plaintiff in the underlying case, Michael Patterson ("Patterson"), at a restaurant known as The Shuckin' Shack Oyster Bar ("The Shuckin' Shack") in Summerville, South

Carolina. Lang has consistently maintained that the interaction became escalated when Patterson made aggressive and unprovoked verbal threats to Lang. To the best of Lang's recollection, the words Patterson spoke to him immediately preceding the incident were to the effect of "I'm going to fuck you up." Upon information and belief, Patterson was under the influence of alcohol at the time of the incident.[1] Lang has consistently maintained that his own actions were in self-defense. Specifically, Lang's actions at issue were reflexive in nature and in direct response to Patterson's actions, which immediately followed his verbal threats, of reaching into his back pocket and then bringing his arm up towards Lang's face in an unexpected and physically threatening manner.

To the best of his knowledge, Lang had never met Patterson. However, Lang understood that Patterson was friends with several individuals who frequented the bar and who had been rude and aggressive on prior occasions to his girlfriend, who was with him on the night in question and with whose safety he was concerned. Lang did not know Patterson's intent in reaching for his back pocket and then moving his arm up to Lang's face – other than in the moment, which lasted a mere few seconds, Lang presumed Patterson to have reached for a weapon based upon his preceding verbal threats. Additionally, Lang's concern for himself and his girlfriend were heightened by the presence of Patterson's larger friend who accompanied Patterson.

Lang's account of the incident is supported by video evidence from The Shuckin' Shack's surveillance camera which captured the disputed interaction.[2] The surveillance footage depicts

---

[1] See Patterson's bar receipt from April 13, 2019, which was produced by The Shuckin' Shack pursuant to the Record Custodian Affidavit of Jason Thorpe and in response to a subpoena for same sent by Lang in the underlying suit. (Attached as **Exhibit A** and produced in discovery as Lang Production 000228-000229). Lang notes that the receipt identifies what appears to be three beers, a liquor drink, and a liquor shot for one individual Patterson; no food is identified.

[2] A 24-second video produced in discovery as Lang Production 000402 will be supplemented to the Court by hand as **Exhibit B**, along with courtesy binders of the present memorandum, pursuant to Judge Gergel's preferences. (Still shots of individual video frames are provided herein.)

Patterson speaking to Lang before Patterson reaches for his back pocket.[3]  Patterson then brings

his arm and hand up to Lang's face.[4]  Lang reacts suddenly to Patterson's actions by backing away

and slapping at the approaching threat, in the process contacting Patterson's hand and face.[5]

      Conversely, the surveillance video contradicts several allegations made by Patterson, such

as the allegation that "[Lang], for no apparent reason, hit [Patterson] in the face with his fist."[6]

Additional video evidence obtained from the responding officer Daniel Tyson's body camera

further demonstrates the falsity of Patterson's allegations.[7]  In particular and without limitation,

Patterson's friend James Shaw (whose nickname is "Big Bear") states "me and him [Patterson]

were sitting there talking, I'm getting my tab, I'm going to leave, he [Patterson] goes 'these guys

over here keep bumping into me, we're going to get in a fight if they keep fucking messing with

me.'  And the next thing I know that guy [Lang] freakin' slaps the t-total shit out of him

[Patterson]."[8]  Later, one of the officers said to Patterson "it sounds like he [Lang] got mad about

---

[3] See 5 screenshots attached as **Exhibit C**, which depict Lang's back to the camera and Patterson facing Lang before reaching into his back pocket.  (Highlights are to Patterson's right arm reaching for his back pocket.)

[4] See 9 screenshots attached as **Exhibit D**, which depict Patterson moving his right arm from his back pocket and up to Lang's face.  (Highlights are to Patterson's right arm reaching for Lang's face.)

[5] See 6 screenshots attached as **Exhibit E**, which depict Lang slapping at Patterson's approaching hand and striking Patterson's hand and face.  (Highlights are to Patterson's right arm getting slapped away by Lang's reaction.)

[6] See Patterson's Original Complaint ¶7, filed September 17, 2020.  (Attached as **Exhibit F** and produced in discovery as Lang Production 000203-000225).

[7] A 1 hour, 17 minute, and 43 second video produced in discovery as Lang Production 000408 will be supplemented to the Court by hand as **Exhibit G**, along with courtesy binders of the present memorandum, pursuant to Judge Gergel's preferences.

[8] Pertinent interview of James Shaw from Officer Tyson's body camera video is around minute 46:41.

what you said to him" to which Patterson responded "yeah."[9]  All of which contradicts Patterson's

allegations that Lang punched him without provocation and that Patterson played no active role in

causing Lang's responsive behavior.

Discovery in the underlying case is ongoing and Patterson's deposition in the underlying

case is currently set to take place on September 14, 2021.  The judge has made no dispositive

ruling in the case nor has there been any finding of fact by the jury.

## PERTINENT POLICY LANGUAGE

The consumer homeowner policy that State Farm sold to Lange contains coverage for

certain personal liabilities.  The applicable policy language at issue states:[10]

> SECTION II – LIABILITY COVERAGES
> COVERAGE L – PERSONAL LIABILITY
> If a claim is made or a suit is brough against an insured for damages because
> of bodily injury or property damage to which this coverage applies, caused
> by an occurrence, we will:
> 1.  pay up to our limit of liability for the damages for which the insured is
>     legally liable; and
> 2.  provide a defense at our expense by counsel of our choice…
>
> Endorsement FE-3524 and FP-7955 Definitions:
> 7. "occurrence", when used in Section II of this policy, means an accident,
> including exposure to conditions, which first results in:
>         a. bodily injury… during the policy period.
>
> SECTION II – EXCLUSIONS
> 1.  Coverage L and Coverage M do not apply to:
>     a.  Bodily injury or property damage:
>     1)  Which is either expected or intended by the insured; or
>     2)  Which is the result of willful and malicious acts of the insured;

---

[9] Pertinent interview of Patterson from Officer Tyson's body camera video is around minute 50:48.

[10] Lang's Homeowners Policy is attached as Exhibit B to State Farm's Complaint for Declaratory
Judgment [ECF No. 1-2].

As State Farm's memorandum admits, the policy does not define the term "accident."[11]

## SOUTH CAROLINA LAW REGARDING
## INTENTIONAL ACTS EXCLUSION LANGUAGE AT ISSUE

"[C]lauses of inclusion should be broadly construed in favor of coverage, and when there are doubts about the existence or extent of coverage, the language of the policy is to be 'understood in its most inclusive sense.'"[12]  "Courts should not, however, 'torture the meaning of policy language in order to extend' or defeat coverage that was 'never intended by the parties.'"[13]

Where "'Accident' is not a defined term in the policy... it has been well-defined in South Carolina law to mean "'[a]n effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and cannot be charged with the design of producing.'" ... In other words, accidents require that either the act or the injury resulting from the act be unintentional."[14]  "'[A]n effect which the actor did not intend to produce and cannot be charged with the design of producing, is produced by accidental means.'"[15]  "The rule established in [Miller v. Fidelity–Phoenix Ins. Co., 268 S.C. 72, 231 S.E.2d 701 (1977)] that the damages resulting from the actions, and not merely the actions

---

[11] State Farm's Memorandum in Support of Motion for Partial Summary Judgment, page 1 [ECF No. 17-1].

[12] Cook v. State Farm Auto. Ins. Co., 656 S.E.2d 784, 786 (S.C. Ct. App. 2008) (quoting Buddin v. Nationwide Mut. Ins. Co., 157 S.E.2d 633, 635 (1967)).

[13] Id. at 786-87 (quoting Torrington Co. v. Aetna Cas. & Sur. Co., 216 S.E.2d 547, 550 (S.C. 1975)).

[14] Liberty Mut. Fire Ins. Co. v. JM Smith Corp., 602 F. App'x 115, 120 (4th Cir. 2015) (internal quotation to State Farm Fire & Cas. Co. v. Barrett, 530 S.E.2d 132, 136 (S.C.Ct.App.2000) (quoting Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451, 458 (1937)).

[15] Goethe, 190 S.E. at 458 (citation omitted).

themselves, must be intentional, is clearly the law in South Carolina today."[16]

The possibility of coverage triggering an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer.[17]

## BACKGROUND OF LANG'S STATE FARM CLAIM

Lang received a letter of representation from Patterson's attorney on or around early June 2019. On June 3, 2019, Lang called State Farm to inform them of the events concerning the subject evening and spoke with Makayla [last name unknown]. Lang was told State Farm would likely provide coverage for the claim and he sent the letter of representation to State Farm, which it received on or around June 7, 2019.[18] On July 8, 2019, State Farm sent Lang a reservation of rights letter dated June 10, 2019, which referenced Patterson's attorney's statement that his representation was "in connection with injuries suffered as a result of an unprovoked assault and battery that occurred at the Shuckin Shack on April 14, 2019."[19] State Farm provided no information which acknowledged or considered Lang's statements regarding what actually transpired on the night in question.

Lang continued to provide State Farm materials as they were received and on October 4, 2019, State Farm requested the surveillance video which was obtained from The Shuckin' Shack.[20]

---

[16] Allstate Ins. Co. v. Biggerstaff, 703 F. Supp. 23, 24 (D.S.C. 1989).

[17] City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (citing USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 798 (S.C. 2008)).

[18] See email from State Farm indicated loss report was received on June 7, 2019. (Attached as **Exhibit H** and produced in discovery as Lang Production 000031-000034).

[19] See reservation of rights letter from State Farm dated June 10, 2019, last page. (Attached as **Exhibit I** and produced in discovery as Lang Production 000410-000416).

[20] See letter from State Farm claim specialist Scott Whiteside dated October 4, 2019. (Attached as **Exhibit J** and produced in discovery as Lang Production 000417).

During the course of their discussions, Lang informed State Farm claim specialist Scott Whiteside of the actual events concerning the subject evening. On December 10, 2019, State Farm sent Lang a coverage denial letter asserting it had "completing our investigation" and acknowledging receipt of the surveillance video of the incident.[21] State Farm provided no information which acknowledged or considered Lang's statements regarding what actually transpired on the night in question or any recognition that the surveillance video supported Lang's description of events.

Patterson's attorney sent Lang a demand package dated June 30, 2020.[22] Lang forwarded the demand package to State Farm on July 13, 2020.[23] Patterson's demand package alleged a number of personal injuries (headaches, cracked teeth, jaw pain, and a concussion) none of which were intended by Lang and none of which appear to be present or complained of during police interviews of Patterson on the night in question (as captured on Officer Tyson's body camera). Other assertions in the demand package are called into question, if not directly contradicted, by Officer Tyson's body camera video such as Patterson's allegation Lang through a punch (which Patterson demonstrated and acknowledged on video to be a slapping gesture) and witness James Shaw's affidavit which omits reference to Patterson's words "these guys over here keep bumping into me, we're going to get in a fight if they keep fucking messing with me."

State Farm contacted Lang to discuss Patterson's demand package during which conversation Lang informed State Farm of the false allegations of Patterson and reiterated his

---

[21] See first coverage denial letter from State Farm dated December 10, 2019. (Attached as **Exhibit K** and produced in discovery as Lang Production 000238-000241).

[22] See Patterson's demand letter dated June 30, 2020 [medical records omitted]. (Attached as **Exhibit L** and produced in discovery as Lang Production 000256-000274).

[23] See email from Lang to State Farm dated July 13, 2020. (Attached as **Exhibit M** and produced in discovery as Lang Production 000043).

explanation of the night's events.  On July 17, 2020, less than four days after receiving Patterson's demand package and presumably without interviewing any witnesses of the evening other than Lang (such as Lang's girlfriend or the witnesses identified by Patterson), State Farm issued Lang another coverage denial letter which simply stated the blanket denial from the "letter dated December 10, 2019, will still stand."[24]  State Farm provided a contact for "questions or concerns," someone with whom Lang had previously conversed, but made no further invitation or effort to investigate the claim to determine the possibility of coverage.

On September 17, 2020, Patterson filed the Original Complaint.  Lang emailed the Original Complaint to State Farm on September 24, 2020.[25]  On October 1, 2020, Lang spoke with an in-house attorney for State Farm in which he reiterated his explanation of the night's events and requested that State Farm provide him with a defense.  State Farm acknowledged that a conversation took place on this date via email of the same date, but referred again to its coverage denial letter dated December 10, 2019.  State Farm's in-house counsel did not inform Lang that State Farm was aware that a genuine question of fact regarding self-defense, in response to a third-party's allegations of assault, triggers a duty to defend and possibility of coverage under the policy language at issue.[26]

Because State Farm wrongfully denied him a defense, Lang retained personal counsel at his own expense in early October 2020.  Lang's personal counsel requested that he obtain a copy

---

[24] See second coverage denial letter from State Farm dated July 17, 2020.  (Attached as **Exhibit N** and produced in discovery as Lang Production 000231).

[25] See email from Lang to State Farm dated September 24, 2020.  (Attached as **Exhibit O** and produced in discovery as Lang Production 000046-000047).

[26] See, e.g., State Farm v. Blanton No. 4:13-CV-2508-RBH, 2015 WL 9239788 (D.S.C. Dec. 17, 2015) (Attached as **Exhibit P**) and State Farm v. Mitchell No. 3:15-1673-TLW, 2016 WL 5661690 (D.S.C. Sept. 30, 2016) (Attached as **Exhibit Q**).

of his policy directly from State Farm with the expectation that State Farm would more quickly be able to provide Lang a copy of his policy directly, rather than by waiting to confirm administrative requirements that State Farm may have in providing a copy of the policy to counsel. Lang began his effort of calling State Farm in early/mid-October 2020 to obtain a copy of his policy.

On October 7, 2020, State Farm sent Lang a coverage denial letter which found that the Original Complaint did not trigger coverage.[27] Again, State Farm provided no information which acknowledged or considered Lang's statements regarding what actually transpired on the night in question or any recognition that the surveillance video supported Lang's description of events. State Farm made no further invitation or effort to investigate the claim to determine the possibility of coverage nor did it request any additional information from Lang or interview any witnesses. State Farm did not acknowledge or adhere to what it had learned in prior South Carolina cases litigating the same policy language under disputed facts of assault versus self-defense – which is that a genuine question of fact regarding self-defense, in response to a third-party's allegations of assault, triggers a duty to defend and possibility of coverage. State Farm further did not acknowledge or adhere to its responsibility to consider facts known to it which were outside of the four corners of the Complaint.

Lang's personal counsel initiated conversations with State Farm's in-house counsel during October 2020 by politely explaining that State Farm was incorrect in its prior denials of a defense to Lang, that the Original Complaint referenced the term "reckless" which is a related tort between negligence and intent, and explaining State Farm's duty to consider facts outside of the Original Complaint such as Lang's statements and the videos. Lang's personal counsel informed State

---

[27] See third coverage denial letter from State Farm dated October 7, 2020. (Attached as **Exhibit R** and produced in discovery as Lang Production 000232-000237).

Farm's in-house counsel that a comprehensive written response would be provided to State Farm explaining its breach of obligations upon receipt of the insurance policy, which had not yet been received. State Farm's in-house counsel informed Lang's personal counsel that State Farm would only potentially reconsider its position upon receipt of an Amended Complaint that expressly triggered coverage.

As Lang continued to call to inquire upon his request for a copy of his policy, he spoke with State Farm representative Mark Black on November 2, 2020, who informed Lang [paraphrased]: "Responses to policy requests usually come from the regional office that has 700+ employees that is now down to 20 something. I will still send you the actual documents once they finally send them to me via UPS, however, they assured me this attachment was the exact same verbiage as your policy. They just say 'sample' on them." State Farm sent Lang this surrogate policy which it represented to contain his actual policy language via email dated November 2, 2020; the surrogate policy provided contained materially different language than Lang's actual policy cited above.[28] Up until the time that State Farm finally provided Lang his actual policy on December 3, 2020,[29] Lang relied on the surrogate policy to contain accurate policy language with the understanding that the materially different language could deprive him of any coverage under the policy – coverage which he in fact possessed.

Patterson filed an Amended Complaint on November 9, 2020.[30] The Amended Complaint contained a "Negligence" cause of action with the following new allegations:

---

[28] See email from State Farm to Lang dated November 2, 2020, with attached false sample policy. (Attached as **Exhibit S** and produced in discovery as Lang Production 000162-000202).

[29] See email from State Farm to Lang's personal counsel dated December 3, 2020. (Attached as **Exhibit T** and produced in discovery as Lang Production 000009).

[30] See Exhibit A to State Farm's Complaint for Declaratory Judgment [ECF No. 1-1].

28. The Defendant owed the Plaintiff a duty of care to act reasonably as a co-patron in a public place and to refrain from acting unreasonably in physically contacting the Plaintiff.

29. To the extent the Defendant alleges self-defense or provocation as a defense in this matter, if any, the Defendant did not act reasonably under the circumstances and breached his duty of care.

30. As a direct and proximate result of the Defendant's breach of his duty of care, the Plaintiff has been injured and is entitled to an award of damages against the Defendant.

Lang's personal counsel provided to State Farm the Amended Complaint on November 18, 2020.[31] Over the next several days, Lang's personal counsel explained to State Farm the error of its position as well as the undue delay it had taken in providing a copy of Lang's actual policy. Lang's personal counsel explained that he could not properly advise Lang or respond to State Farm without a copy of his actual policy. However, Lang's personal counsel again explained that the Original Complaint triggered a duty to defend and that State Farm was in violation of its duties to consider facts outside of the Complaint. Lang's personal counsel forwarded an instructive case Allstate v. Ingraham which aptly framed the issues posed by the policy language and disputed facts, State Farm's duties under the policy, and which exemplified State Farm's inability to self-determine a disputed issue of an "intentional tort" prior to a finding of fact by a jury. [32]

Pursuant to State Farm's representation it would not have a coverage opinion on the Amended Complaint prior to the filing deadline, Lang's personal counsel filed an Answer to Patterson's Amended Complaint on November 23, 2020.[33] Lang's Answer asserted a number of

---

[31] See emails between State Farm to Lang's personal counsel dated November 18-20, 2020. (Attached as **Exhibit U** and produced in discovery as Lang Production 000010-000030).

[32] No. 7:15-CV-3212-BHH, 2017 WL 976301 (D.S.C. Mar. 14, 2017). (Attached as **Exhibit V**).

[33] Attached as **Exhibit W** and produced in discovery as Lang Production 000035-000042.

factual denials and affirmative defenses including self-defense, defense of others, provocation, comparative negligence, intervening negligence, and sudden emergency. Lang's Answer was provided to State Farm via email on November 24, 2020.[34] State Farm finally provided a copy of Lang's policy on December 3, 2020, almost two months after it was initially requested and after the deadline to respond to Patterson's Complaint, and after its provision to Lang of a false sample policy containing materially different language.

In mid-December 2020, State Farm retained defense counsel for Lang which contacted Lang directly. State Farm did not acknowledge that it determined that Lang was owed a defense or that it would reimburse Lang's personal counsel's costs. State Farm has not offered to pay Lang's expenses in writing and/or in full. At the time that State Farm provided defense counsel in December 2020, it was a concern that the immediate seeking of past costs at that time could cause State Farm to take further adverse action to Lang – consistent with its actions throughout the life of the claim. A decision was made not to risk further stress and personal expense to Lang by requesting from a hostile and self-interested State Farm past costs – even though State Farm, without cause or warning, chose such an adverse course of action by filing the present suit (without notice to or service upon Lang's personal counsel). Since filing the subject declaratory judgment action, State Farm has rejected Lang's request to reimburse him for his legal expenses pursuant to its response to Lang's *Tyger River* Demand dated June 23, 2021.[35]

---

[34] See email from Lang's personal counsel to State Farm dated November 24, 2020. (Attached as **Exhibit X** and produced in discovery as Lang Production 000249).

[35] See Lang's *Tyger River* demand letter to State Farm date June 10, 2021 [false sample policy omitted] (attached as **Exhibit Y** and produced in discovery as Lang Production 000114-000161); State Farm's rejection and counteroffer to Lang's *Tyger River* demand letter dated June 23, 2021 (attached as **Exhibit Z** and produced in discovery as Lang Production 000248).

## PROCEDURAL POSTURE

The present action was filed on April 15, 2021. Lang answered State Farm's discovery on July 29, 2021. State Farm has a deadline to name an expert by September 9, 2021, and the current discovery deadline is November 8, 2021. Lang is in the process of issuing discovery requests to State Farm, which has been delayed by the necessity to respond to State Farm's convoluted and meritless motion, but which will explore, *inter alia*, State Farm's handling of Lang's claim, State Farm's position on the evidence of the present and underlying case, State Farm's guidance and policies on the processing of homeowner's insurance claims in South Carolina, and State Farm's potential change in policies instituted in response to Blanton and Mitchell.

In the underlying action, discovery is also ongoing although written and documentary discovery has been exchanged. Patterson's deposition is currently scheduled for September 14, 2021. There is not yet any scheduled mediation or trial date.

## STANDARD OF REVIEW

In considering the motion for summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[36] Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there [being] no genuine issue for trial."[37]

Summary judgment should only be granted in those cases in which there is no issue of material fact involved and inquiry into the facts is not necessary to clarify application of the law.[38] A district court should not grant summary judgment "unless the entire record shows a right to

---

[36] See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).

[37] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

[38] See McKinney v. Bd. of Trustees Mayland Cmty. Coll., 955 F.2d 924 (4th Cir. 1992).

judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances."[39]

Where the parties have not yet had an opportunity to complete the discovery, a grant of summary judgment in favor of an insurer would be premature.[40]

## ARGUMENT AND ANALYSIS OF CAUSES OF ACTION AT ISSUE

As an initial matter – which Lang submits disposes of State Farm's entire summary judgment motion – *State Farm has admitted that the issue of whether it owes indemnity coverage under the policy is unripe and can only be resolved after a trial in the underlying case*.[41]

It is axiomatic that "the duty to defend is broader than the duty to indemnify."[42]

State Farm's conduct throughout the entirety of the claim, the handling of the underlying suit, the filing of this frivolous declaratory judgment action, and filing of this meritless motion – all reflects its <u>willful</u> violation of its duties under South Carolina law and its clear <u>intent</u> to overwhelm Lang through a war of attrition by causing him to expend considerable personal funds to protect his interests. Lang is an individual consumer who bought a homeowner's policy, not a business that bought a commercial liability policy. State Farm is demonstrating its awareness of the extreme advantage of resources that it enjoys over Lang and is attempting to cover its tracks of deceit and bad faith by causing Lang to waste personal resources protecting his legal interests.

---

[39] <u>See</u> <u>Campbell v. Hewitt, Coleman & Assocs.</u>, 21 F.3d 52, 55 (4th Cir. 1994).

[40] <u>See</u> <u>Insurance Inv'rs Title Ins. Co.</u>, 232 F.R.D. at 257 (denying insurance company's motion for summary judgment where there were four months of discovery remaining).

[41] <u>See</u> State Farm's memorandum, page 7, page 9, page 11, and footnotes 2 and 4.

[42] <u>Ross Dev. Corp. v. Fireman's Fund Ins. Co.</u>, 809 F. Supp. 2d 449, 457 (D.S.C. 2011); <u>USAA Prop. & Cas. Ins. Co. v. Clegg</u>, 661 S.E.2d 791, 796–97 (2008); <u>Sloan Construction Company, Inc. v. Central National Insurance Company of Omaha</u>, 269 S.C. 183, 236 S.E.2d 818 (1977); and <u>Liberty Life Ins. Co. v. Comm. Union Ins. Co.</u>, 857 F.2d 945, 950 (4th Cir. 1988).

14

State Farm's actions are particularly egregious and indicative of State Farm's intentional wrongful misconduct since it has unsuccessfully litigated these issues in similar motions that it lost in the <u>Mitchell</u> and <u>Blanton</u> cases cited *supra*. In the absence of judicial review of its activities and a fair opportunity for discovery into the same, State Farm obviously intends to continue to treat South Carolina insureds with dishonesty and bad faith, violate its various contractual and statutory duties, and to act as judge and jury of its duty to provide coverage pursuant to its own whims and under threat of a war of attrition to any insured who dares challenge it.

Were the Court to grant State Farm summary judgment at this stage, it would deprive discovery and resolution of factual disputes over, *inter alia*: (1) State Farm's basis for each and every coverage denial it sent Lang; (2) State Farm's basis for filing the subject declaratory judgment action; (3) State Farm's guidance and policies for handling South Carolina claims pertaining to the intentional acts exclusion language at issue, particularly in cases involving questions of self-defense and since litigating and losing its present position in the <u>Mitchell</u> and <u>Blanton</u> cases cited *supra*; (4) the full facts regarding not only State Farm's coverage denial but also the wrongful and deceitful handling of Lang's claim; and (5) full discovery and a proper determination of the facts of the underlying action.

## 1. State Farm should be denied summary judgment on its declaratory judgment action asserting that it owes no duty to defend Lang.

The following evidence, that State Farm has either willfully ignored or recklessly disregarded, presents questions of fact which can only be resolved by the court or jury in the underlying action. The existence of these questions of fact required State Farm to defend Lang pre-suit and continue to require State Farm to provide Lang's defense:

- Lang's multiple recorded statements to State Farm (which Lang does not yet possess but seeks in discovery) in which he explained he acted in self-defense and without any intent to cause Patterson's alleged injuries.

- Multiple witnesses to the incident which have yet to provide sworn testimony.

- The Shuckin' Shack surveillance video which shows Patterson reach in his back pocket and then move his arm up towards Lang's face prior to Lang's reflexive response.

- Patterson's friend James Shaw stating to the police, as recorded on the body camera video, that Patterson said "these guys over here keep bumping into me, we're going to get in a fight if they keep fucking messing with me" immediately before the incident.

- The discrepancy between Patterson's alleged damages and his apparent lack of any serious injury throughout his appearance on the police body camera video.

- Patterson's bar receipt which shows the consumption of three beers, a liquor drink, and a shot and no consumption of food which evidences that he was likely in an intoxicated state of mind.

As the Mitchell court aptly ruled against State Farm in a similar case involving the same policy language:

> "Although a determination of an insurer's duty to defend is dependent upon the complaint, an analysis of this duty involves the allegations of the complaint and not the specifically identified causes of action. Moreover, an insurer's duty to defend may arise from facts outside of the complaint that are known to the insurer." City of Hartsville v. S. Carolina Mun. Ins. & Risk Fin. Fund, 382 S.C. 535, 543, 544–45 (2009).
>
> Plaintiff State Farm is currently defending the insured, Defendant Mitchell, in the underlying state court action filed by Defendant Harry. **As Mitchell asserts he was acting in self-defense, and for the reasons explained in more detail below, the Court concludes that the allegations in the underlying state court pleadings and filings, along with the facts known to the insurer, create a possibility of coverage under the Policy in the state court proceeding.** See, e.g., Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n, 305 S.C. 247, 249 (Ct. App. 1991) (discussing an insurer's duty to defend and stating "[i]n examining the complaint, we must look beyond the labels describing the acts, to the acts themselves which form the basis of the claim against the insurer").
>
> Thus, Plaintiff State Farm has a duty to defend Defendant Mitchell, the insured, in the underlying state court action… filed against him by

>Defendant Harry.  **Accordingly, Plaintiff State Farm's motion for summary judgment is denied to the extent it seeks judgment on the issue of duty to defend…. Defendant Harry's motion for summary judgment is granted to the extent it seeks judgment on the issue of State Farm's duty to defend Defendant Mitchell in the state court case**.

State Farm Fire & Cas. Co. v. Mitchell, No. 3:15-1673-TLW, 2016 WL 5661690, at *4 (D.S.C. Sept. 30, 2016) (internal citations to court filings and footnote omitted) (emphasis added).

It is important to note that the Mitchell court further recognized that: "'If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error.'"  Id. quoting State v. Light, 378 S.C. 641, 649-50, 664 S.E.2d 465, 469 (2008) (citing State v. Slater, 373 S.C. 66, 644 S.E.2d 50 (2007)).  This is critical because it highlights that State Farm was required to defend Lang from the beginning of the claim based upon Lang informing State Farm of the actual circumstances of the incident.  There was never any requirement that Patterson plead negligence to trigger State Farm's duty to defend.  Nonetheless, State Farm has continually refused to acknowledge this reality throughout the claim, even when presented with the video evidence, and even despite its admission that there are questions of fact regarding coverage for indemnity.

The holding in Blanton is even more instructive on the speciousness of State Farm's assertion it owes Lang no defense.  In Blanton, the jury made a sizeable award against the insured and apparently believed that the underlying plaintiff proved a case of assault despite the insured's assertion of self-defense and the court's jury charge on the same.  However, the Blanton court could not determine the ultimate issue of indemnity coverage absent additional findings of fact (having acknowledged there was always a duty to defend).  In other words, the second prong of the intentional acts exclusion, being that the harm must have been intended, was not satisfied

17

merely by the existence of a verdict. As in the present case, Lang certainly contends he did not

intend the harm that Patterson has alleged (and disputes its legitimacy).

Blanton held, in pertinent part:

> Here, Blanton testified that he hit Allgire…. Applying the second prong [of
> the intentional acts exclusion], *whether the results of the act were intended*,
> is a more difficult question. The jury in the underlying case apparently did
> not find that Blanton hit Allgire in self defense. They found for Allgire and
> awarded a sizable amount of damages. However, it is unclear whether
> Blanton intended that the hit would cause the type of injury suffered by
> Allgire. Therefore, factual issues are present as to whether the bodily injury
> was expected or intended by the insured. This conclusion is actually
> supported by the Maryland case cited by Allgire in his supplemental brief.
> In Allstate Ins. Co. v. Atwood, 572 A.2d 154 (Md. Ct. App. 1990), the
> plaintiff in a tort lawsuit alleged that the insured caused serious injury to his
> face. The case was submitted to the jury on negligence and battery. The
> jury specifically found for the plaintiff on the negligence claim. The
> homeowner's insurance company filed a declaratory judgment action to
> determine the applicability of an exclusion for "bodily injury …
> intentionally caused by an insured person." The court held that the insurer
> would be bound by the finding by the jury on the "intentional/negligence
> issue if, but only if, that issue was fairly litigated in the tort trial." Id. at 261.
>
> While the Maryland court referred to the possibility that the parties to the
> tort action may have colluded to obtain a verdict that would create coverage,
> the language of the case would also apply to the situation in the case at bar,
> where it would appear that neither fraud nor collusion is present, but the
> issues pertaining to the exclusion have not been fully and fairly litigated.
> Addressing the argument of State Farm that the plaintiff attempted to cloak
> intentional acts as negligence in order to obtain coverage, the state court
> judge in the underlying tort case found sufficient evidence to charge the jury
> on negligence as well as self defense. Therefore, this court does not find
> that the acts by Blanton were intentional acts cloaked in negligence terms.
> However, the Court does not believe that the issues presented in the
> declaratory judgment action were fully and fairly litigated in the state court.
> If the jury verdict was based solely on negligence, and the jury had not
> awarded punitive damages, this Court would possibly have been able to find
> that Blanton did not expect or intend bodily injury as a matter of law.
> However, the jury did award Allgire punitive damages, thus finding either
> willful, wanton, or reckless behavior by Blanton. It is not clear which one.
> Nevertheless, the award of punitive damages does not answer the question
> of whether the second prong of the test for the intentional act exclusion was
> met, that is, whether Blanton intended to cause the type of injury which
> resulted. Therefore, the motion for summary judgment by Allgire is

> denied. **The Court will schedule a bench trial to determine the factual issues in State Farm's declaratory judgment ...** and make factual and legal findings regarding whether an occurrence was present and whether the exclusions apply, namely, whether Allgire's bodily injury was expected or intended by Blanton; and whether Blanton's actions were willful and malicious.

State Farm Fire & Cas. Co. v. Blanton, No. 4:13-CV-2508-RBH, 2015 WL 9239788, at *11 (D.S.C. Dec. 17, 2015) (emphasis in original).

Indeed, even before State Farm litigated and lost this issue and has apparently failed to take measures to correct its claims handling procedures, it was the longstanding law of South Carolina that a question of fact regarding self-defense triggers a duty to defend under similar policy language at issue in this case:

> As we stated, the appropriate precedent requires a two-prong intentional act analysis to determine the validity of the policy exclusion. Miller, *supra*. The intentional act or first prong requires that the insured actually intended to strike the other party. On the present record, the circumstances surrounding the altercation are somewhat in dispute; however, it is clear that the overall circumstances were hostile. It is axiomatic that even if it was in self defense, the act of hitting Mr. Singleton was intentional. Thus, the first prong is satisfied here.
>
> This claim of self defense raises the question of whether the intentional act was done for an intentional result which is the second prong of the Miller analysis. The present record supports the finding that insured Webb was reacting to Singleton when Webb struck Singleton in the face. The record also contains evidence that Singleton participated in some sort of provocation. Whether this provocation reasonably justified Webb's actions is a question which is inherent in any self defense claim.
>
> The Respondents argue that Webb did not specifically intend to strike Singleton in the face or that Webb intended or expected that Singleton would have suffered the extensive eye injuries. Moreover, because self defense was arguably present, the referee found that Webb only intended to protect himself, not inflict a specific injury on Singleton. See Breland v. Schilling, 550 So.2d 609 (La.1989); Preferred Mut. Ins. Co. v. Thompson, 23 Ohio St.3d 78, 491 N.E.2d 688 (1986); Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981). Because the evidence in the record supports the referee's finding that Webb did not intend a specific result, we see no reason to disturb the referee's decision.

19

<u>Vermont Mut. Ins. Co. v. Singleton By & Through Singleton</u>, 446 S.E.2d 417, 420–21 (1994) (footnote omitted) (affirming decision of special referee that the insurer was required to provide a defense to the insured for the alleged assault and assertion of self-defense).[43]

### 2. State Farm should be denied summary judgment against Lang's first counterclaim alleging breach of good faith and fair dealing.

Discovery is in its infancy and State Farm's motion is unripe. As previously discussed, State Farm has owed Lang a duty to defend him which it denied him, State Farm has wrongfully filed this frivolous declaratory judgment action and meritless summary judgment motion, State Farm has refused to properly investigate Lang's claim or consider extrinsic evidence, and State Farm has provided a number of false statements to Lang.

Further, it is of critical importance to note that Lang asserts actionable bad faith against State Farm not only in the wrongful and intentional breach of its contractual and statutory duties, but also in the way it has handled his claim and prosecuted this declaratory judgment action. Lang provided State Farm an opportunity to correct its mistake in its *Tyger River* demand, which State Farm denied and countered. Apparently, State Farm believes that coverage is negotiable with an insured and that the threat and expense of ongoing litigation is a suitable way to treat South Carolina consumer insureds who purchase their homeowners' policies.

South Carolina "recognize[s] the existence of a cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third-party claims. Furthermore, [South Carolina] decline[s]s to make breach of an express contractual provision a

---

[43] <u>See also</u> <u>Allstate Ins. Co. v. Biggerstaff</u>, 703 F. Supp. 23, 25 (D.S.C. 1989) (insurer's summary judgment motion on the duty to indemnify and defend was "denied as there exist material issues of fact concerning [insured]'s state of mind at the time the acts complained of were committed.").

prerequisite to bringing the action." Tadlock Painting Co. v. Maryland Cas. Co., 473 S.E.2d 52, 55 (1996). "When conflicting evidence is presented, summary judgment on the issue of bad faith is generally inappropriate; however, a court may grant summary judgment on this issue if, viewing the evidence in the light most favorable to the plaintiff, no reasonable finder of fact could have found for the plaintiff on her bad faith claim." Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 772 (D.S.C. 2006) (citing Foster v. Tandy Corp., 828 F.2d 1052, 1055 (4th Cir.1987)).

The Tadlock court went on to hold that "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." 473 S.E.2d at 53 (citation omitted). "[W]e explicitly overruled both Brown and Bartlett to the extent that they suggested a bad faith action is one in contract rather than tort." 473 S.E.2d at 55 (citation omitted).

State Farm's position in the present case is analogous to the insurer in Varnadore v. Nationwide Mut. Ins. Co., 345 S.E.2d 711, 713 (1986), in which the court aptly held:

> [The insurer Nationwide] argues that, from its own investigation, a reasonable basis was found to deny the claim, thereby entitling Nationwide to a directed verdict.
>
> This position is not tenable. First, it binds the insured to the findings and conclusions of the insurer's own independent investigation; next, it effectually insulates the insurer from liability; and, finally, it forecloses a jury consideration of the insured's evidence of bad faith.
>
> The law governing the issue of bad faith by an insurer in processing its insured's claim is stated in the clearest of language in Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616 (1983):
>
> > We hold today that if an insured can demonstrate bad faith or unreasonable action in processing a claim under their mutually binding insurance contract, he can recover in a tort action ... Further, if he can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights, he can recover punitive damages.
>
> 279 S.C. at 340, 306 S.E.2d at 619.

Even if State Farm is somehow not in breach of its contractual duties, which Lang denies and asserts State Farm has already admitted, there is evidence of bad faith handling of Lang's claim to which he is entitled further discovery to develop.

### 3. Lang will consent to the dismissal of his second counterclaim alleging unfair trade practices but requests leave of Court to amend his Counterclaim.

Lang's assertion of unfair trade practices sounds in the evidence against State Farm that it has misled, misinformed, treated unfairly, and otherwise abused Lang as a consumer policyholder by virtue of its actions. However, Lang recognizes South Carolina law addressing the limitation of this cause of action against insurers – which more properly sounds in bad faith and other causes of action. Lang respectfully requests leave of Court to amend his Counterclaim to omit any claim for unfair trade practices but to assert State Farm's various violations of S.C. Code § 38-59-20 in his allegations for bad faith. State Farm asserts there is no cause of action for violation of this statute, which may be true as it pertains to third-parties to the policy. However, there is no authority that Lang is prohibited from establishing bad faith and improper claims handling against State Farm in a first-party bad faith action. See Tadlock Painting Co. v. Maryland Cas. Co., 473 S.E.2d 52, 55 (1996) ("We recognize the existence of a cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims.").

### 4. State Farm should be denied summary judgment against Lang's third counterclaim alleging negligent misrepresentation.

Discovery is in its infancy and State Farm's motion is unripe. As previously discussed, State Farm has provided a number of false representations to Lang that he has relied upon and which has caused him to incur damages and expenses. For instance, State Farm has engaged in a number of misrepresentations including, *inter alia*: (1) all communications to Lang informing him

that State Farm owed no duty to defend and/or indemnify him; (2) all communications to Lang that he would timely receive a copy of his requested policy (which was initially requested in early/mid-October 2020 and which was not provided by State Farm until December 3, 2020, which was after the Answer was due to both the Original and Amended Complaint); (3) State Farm representative Mark Black's verbal communication that [paraphrased] "Responses to policy requests usually come from the regional office that has 700+ employees that is now down to 20 something.  I will still send you the actual documents once they finally send them to me via UPS, however, they assured me this attachment was the exact same verbiage as your policy.  They just say 'sample' on them." along with his email with false State Farm policy language dated November 2, 2020; and (4) all verbal and written communications, pleadings, and discovery responses pertaining to State Farm's self-serving and counterfactual position on the facts of the underlying case and the declaratory judgment inasmuch as they assert an alleged basis for a denial of coverage and/or any actual intentional, malicious, and/or illegal conduct by Lang.

5. **State Farm should be denied summary judgment against Lang's fourth counterclaim alleging breach of contract.**

As explained *supra*, State Farm has owed Lang a defense since the beginning of this claim. Its repeated denials of coverage and insistence that any coverage had to be triggered by an Amended Complaint that alleged negligence, despite the question of fact regarding self-defense, was in breach of its policy with Lang.  Indeed, State Farm has litigated and lost this issue several times prior to attempting to re-litigate it now with Lang.

Further, under certain circumstances the act of filing the declaratory judgment action can be a breach of contract and bad faith.  See State Farm Fire & Cas. Co. v. Barton, 897 F.2d at 732 ("[E]vidence was presented that early in 1987 State Farm agents recommended filing a declaratory judgment, not to determine the rights and obligations of the parties under the insurance contract,

but to gain "some tactical advantages." …. Sufficient evidence was presented for the jury to find that [State Farm] decided to deny [the insured]'s claim so as to earn a profit at the insured's expense, used its investigation to support that denial, and then filed a declaratory judgment action to gain 'tactical advantages.' Viewing the evidence in the light most favorable to appellee, the jury could have found that appellant acted in bad faith and with willful or reckless disregard for appellee's rights under the insurance agreement."); Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 274 S.C. 468, 471–72, 265 S.E.2d 38, 40–41 (1980) ("In Hegler v. Gulf Ins. Co., 243 S.E.2d 443, 444 (1978), we recognized '(t)here is no material difference in the legal effect between an outright refusal to defend and in undertaking the defense under a reservation of rights until a declaratory judgment is prosecuted to resolve the question of coverage.' [Insured] was forced to prosecute this action to enforce its rights under the policy with appellant just as the insured in Hegler was forced to defend an action to enforce his rights under the policy with his insurer. The trial court held [insurer] unreasonably refused to defend the … suit. We agree and uphold the award of attorney's fees."); and Owners Ins. Co. v. Warren Mech., LLC, 324 F. Supp. 3d 650, 655 (D.S.C. 2018), aff'd, 773 F. App'x 714 (4th Cir. 2019) ("The Hegler court's decision to grant attorney's fees to insured parties that prevail in declaratory judgment actions is based upon the idea that the insurance company, in asking for a declaration that it does not have a duty to indemnify or defend the insured in regards to a particular insurance claim, has essentially breached its contract with the insured to indemnify and defend it. This constructive breach of contract allows for the recoupment of attorney's fees, even though no literal contract providing for attorney's fees has been breached and no statutory provision for attorney's fees exists. As this court has found, '[t]he equitable considerations and policy behind the [Hegler] court's holding rested on the insurance company's ability to avoid a contractual duty to defend at the expense of the insured by creating

the need for a declaratory judgment action.' <u>Jessco, Inc. v. Builders Mut. Ins. Co.</u>, 2012 WL 1570015, at *1 (D.S.C. May 3, 2012).").

**6. State Farm should be denied summary judgment against Lang's fifth counterclaim alleging unjust enrichment.**

Discovery is in its infancy and State Farm's motion is unripe. As previously discussed, State Farm has accepted Lang's premiums and wrongfully withheld benefits it lawfully owes him under the terms of the policy. The policy reason behind bad faith against an insurer sounding in tort rather than contract acknowledges the reality that insurance companies are able to make interest off of wrongfully withheld insured's benefits or liability funds wrongfully withheld from third-parties.

Lang intends to work with State Farm and the Court to narrow issues for trial, but he should be afforded the full and fair ability to conduct discovery. At a minimum, there is a question of fact whether State Farm has wrongfully withheld Lang's legal expenses. Lang may ultimately abandon this claim, but he should not be deprived the opportunity to conduct discovery to develop supporting facts.

**7. State Farm should be denied summary judgment against Lang's sixth counterclaim alleging violation of the South Carolina Frivolous Proceedings Act.**

State Farm's memorandum claims the assertion of this claim "is, at best, premature." Which is tantamount to an admission that a disposition of it as a matter of law would be premature.

As discussed *supra*, Lang intends to challenge State Farm's intentions for filing the present action as well as to conduct discovery into the evidence presented in <u>Barton</u>, wherein the court recognized "[E]vidence was presented that early in 1987 State Farm agents recommended filing a declaratory judgment, not to determine the rights and obligations of the parties under the insurance contract, but to gain 'some tactical advantages.'" This practice appears to very much be alive and

well whenever State Farm so chooses to apply it. At a minimum, there is a question of fact whether State Farm has a legitimate basis to have filed this action – particularly given its admission that the issue of indemnity coverage is not ripe and in filing a summary judgment motion on the broader duty to defend despite this admission. Lang should not be deprived the opportunity to conduct discovery to develop supporting facts and has a good faith basis upon which to proceed.

8. **State Farm should be denied summary judgment against Lang's seventh counterclaim requesting a declaratory judgment that State Farm must defend Lang in the underlying lawsuit.**

Lang adopts and incorporates his position and authority set forth above as it pertains to State Farm's summary judgment motion requesting the Court rule that State Farm has no duty to defend Lang. Indeed, State Farm has admitted it owes Lang a duty to defend him based on its admission that the issue of coverage for indemnity is unripe absent a verdict which reasonably decides that issue. Further, the case law cited *supra* is clear that where there is a question of fact regarding self-defense under the policy language at issue in this case, there is a duty to defend. State Farm's attempt to challenge Lang's seeking a declaratory judgment upholding State Farm's duty to defend him should be denied with prejudice.

9. **State Farm should be denied summary judgment against Lang's eighth counterclaim requesting reimbursement of attorney's fees and payment of Lang's ongoing legal expenses.**

State Farm attempts to disparage Lang and his personal counsel for pursuing a claim for Lang's reimbursement of attorney's fees by asserting, as if some absolute shield, that State Farm's present lack of receipt of said bills is somehow a waiver of Lang's right to collect them. This is a grossly misstated oversimplification and ignores the variety of ways to which State Farm may be liable for Lang's attorney's fees: breach of contract, bad faith, S.C. Code § 38-59-40, consequential damages from improper claims practices, and FRCP 54(d).

For a multitude of reasons covered herein which do not need to be repeated, State Farm's obligation to pay Lang's attorney's fees cannot be dismissed at this stage of the case as a matter of law.

## **CONCLUSION**

For the reasons set forth herein, Lang respectfully request that this Court deny State Farm's Partial Motion for Summary Judgment in its entirety, with the exception that Lang requests leave of Court to file an Amended Counterclaim omitting an Unfair Trade Practices cause of action and including the violations of S.C. Code § 38-59-20 in his allegations for bad faith.

*[signature page to follow]*

**PIERCE, SLOAN, KENNEDY & EARLY, LLC**
The Blake-Grimké House
321 East Bay Street (29401)
PO Box 22437 (29413-2437)
Charleston, South Carolina
843-722-7733/843-722-7732 *fax*

*s/ William O. Sweeny IV*
Carl E. Pierce, II (7946)
William O. Sweeny IV (78668)
*Attorneys for Defendant Alan Joseph Lang*

August 10, 2021
Charleston, South Carolina