Report of Thomas H. Hesse in

*State Farm Fire and Casualty Company vs. Alan Joseph Lang and Michael J. Patterson*

*Civil Action No. 2:21-CV-1063-RMG*

**I.     Materials Reviewed by Expert**

a. State Farm Lawsuit Against Lang and Patterson
b. Lang's Answer to State Farm Complaint and Crossclaims
c. State Farm's Memo in Support for Motion for Partial Summary Judgment
d. Lang's Reply Memo to State Farm's Motion for Partial Summary Judgment
e. Judge Gergel's Order and Opinion filed August 17, 2021
f. Expert Report of Gerald M. Finkel
g. Pleadings in State Court Action filed by Michael Patterson
h. Discovery and Document Production by Parties in Federal Court Action
i. Discovery and Document Production by Parties in State Court Action
j. Orders in Federal Court Action
k. Michael Patterson deposition in State Court Action
l. Deposition of Scott Whiteside
m. Deposition of Mary Villano-Dye
n. Deposition of Theresa O'Connor
o. Deposition of John Drakeley
p. Deposition of Nichola Bongiovonni
q. Deposition of Krystle Angrisani
r. *State Farm Fire and Casualty Company v. Blanton*, 2015 WL9239788 (D.S.C. Dec. 17, 2015)
s. *State Farm Fire and Casualty Company* v. Mitchell, 2016 WL5661690 (D.S.C. Sept. 30, 2016)
t. *Allstate Insurance Company v. Ingraham*, 2017 WL 976301 (D.S.C. March 14, 2017)
u. *Great Lakes Insurance SE v. Drayton* 2020 WL 6709990 (D.S.C. June 8, 2020)

**II.     Background**

For the background, quotes are in italics. On Saturday, April 13, 2019, at around 9:40 PM, Alan Lang ("Lang") was involved in an incident with the plaintiff in the underlying case, Michael Patterson ("Patterson"), at a restaurant known as The Shuckin' Shack Oyster Bar ("The Shuckin' Shack") in Summerville, South Carolina.  As a result of the incident, Patterson filed a

lawsuit against Lang alleging Lang, for no apparent reason, hit Patterson in the face. Lang, on the other hand, had consistently maintained that the interaction between him and Patterson became escalated when Patterson made aggressive and unprovoked verbal threats to him. A surveillance camera at The Shuckin' Shack captured the incident. The facts of what occurred during the incident are disputed by the parties.

State Farm Fire and Casualty Company ("State Farm") issued a policy of homeowners insurance, policy number 40-CF-A300-3, with effective dates 12/21/18 to 21/21/19 ("the policy"). The policy contained the following pertinent language:

> SECTION II – LIABILITY COVERAGES
> COVERAGE L – PERSONAL LIABILITY
> If a claim is made or a suit is brough against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
> 2. provide a defense at our expense by counsel of our choice…
>
> Endorsement FE-3524 and FP-7955 Definitions:
> 7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:
>     a. bodily injury… during the policy period.
>
> SECTION II – EXCLUSIONS
> 1. Coverage L and Coverage M do not apply to:
>    a. Bodily injury or property damage:
>    1) Which is either expected or intended by the insured; or
>    2) Which is the result of willful and malicious acts of the insured;

Lang received a letter of representation from Patterson's attorney on or around early June 2019. On June 3, 2019, Lang called State Farm to inform them of the incident. The claim was assigned to Claims Specialist Scott Whiteside ("Whiteside") for handling. Whiteside's claim file note of June 12, 2019 stated as follows:

> *NI was at a bar and was threatened while the person made a quick movement resulting in NI hitting him. A police report was filed with Summer Ville* (sic) *PD. The criminal charging document number is 20192690122707.*

On July 8, 2019, State Farm sent Lang a reservation of rights letter dated June 10, 2019.

On September 17, 2019, Lang sent an email to Whiteside that read as follows:

> *Scott,*
> *I haven't heard anything from their the* (sic) *claimant's attorney in regards to a civil suit. I have attached the video of the incident, you can see where the claimant is saying something to me, he then motions towards me and I swatted him with an open hand.*
> *The pictures are of the claimant after the incident where you can see there was no damage to the claimant.*

Whiteside did not make an entry in the claim file notes that he had received Lang's September 17, 2019 email or indicate in the notes what the content of Lang's email was. Whiteside did not interview Lang's girlfriend who was with Lang at The Shuckin' Shack on the night of the incident. Whiteside did not interview Patterson or Patterson's friends who were at The Shuckin' Shack on the night of the incident. Whiteside did not interview any officers with the Summerville Police Department.

On December 10, 2019, State Farm sent Lang a coverage denial letter asserting the company had completed its investigation. The letter indicated the company had reviewed the video of the incident and the police report. The December 10, 2019 letter made no mention of Lang's assertion he had acted in self-defense.

Patterson's attorney sent Lang a demand package dated June 30, 2020. Lang forwarded the demand package to State Farm on July 13, 2020. State Farm contacted Lang to discuss Patterson's demand package. On July 17, 2020, State Farm issued Lang another coverage denial letter which indicated the denial from the letter dated December 10, 2019 would still stand. On September 17, 2020, Patterson filed the Original Complaint which Lang emailed to State Farm

3

on September 24, 2020. On October 1, 2020, Lang spoke with a representative of State Farm regarding the Original Complaint. On October 7, 2020, State Farm sent Lang a coverage denial letter which indicated the Original Complaint did not trigger coverage. Because State Farm denied him a defense, Lang retained personal counsel at his own expense in early October 2020. Lang's personal counsel started conversations with a representative of State Farm during October 2020 explaining that the company was incorrect in its prior denials of a defense to Lang.

As Lang continued to call to inquire upon his request for a copy of his policy, he spoke with State Farm representative Mark Black on November 2, 2020, who informed Lang [paraphrased]: *Responses to policy requests usually come from the regional office that has 700+ employees that is now down to 20 something. I will still send you the actual documents once they finally send them to me via UPS, however, they assured me this attachment was the exact same verbiage as your policy. They just say 'sample' on them.* State Farm sent Lang this surrogate policy which it represented to contain his actual policy language via email dated November 2, 2020; the surrogate policy provided contained materially different language than Lang's actual policy. State Farm provided Lang his actual policy on December 3, 2020.

Patterson filed an Amended Complaint on November 9, 2020. The Amended Complaint contained a "Negligence" cause of action. Lang's personal counsel provided the Amended Complaint to State Farm on November 18, 2020. Pursuant to State Farm's representation it would not have a coverage opinion on the Amended Complaint prior to the filing deadline, Lang's personal counsel filed an Answer to Patterson's Amended Complaint on November 23, 2020 and provided State Farm a copy via email on November 24, 2020. On December 7, 2020, State Farm retained defense counsel, Amanda Dudgeon with Chandler and Dudgeon, to represent Lang. State Farm advised Lang by letter dated December 8, 2020 that it was providing a defense

4

to the Amended Complaint subject to a reservation of rights. The December 8, 2020 letter included the following statement: *there is no coverage under the policy for the assault and battery claims asserted against you based on the allegations in the amended complaint.*

State Farm filed a Complaint for Declaratory Judgment on April 12, 2021. On August 21, 2021, United States District Judge, Richard Mark Gergel, issued his Order regarding State Farm's motion for partial summary judgment as to Lang's counterclaims. Judge Gergel denied State Farm's motion regarding the company's duty to defend and found, to the contrary, that State Farm owed Lang a defense in the Underlying Action. Judge Gergel also denied State Farm's motions for summary judgement regarding Lang's following counterclaims: breach of the duty of good faith and fair dealing; negligent misrepresentation; breach of contract; and unjust enrichment. Judge Gergel granted State Farm summary judgment on Lang's counterclaims for violation of the South Carolina Unfair Practices Act, for violation of the South Carolina Frivolous Civil Proceedings Sanctions Act, and on Lang's request for *Cumis* counsel.

State Farm's guidance and policies for handling claims include the following:

*Third party claims may require extensive investigation. Factors such as the facts of the loss, extent of the damages being claimed, nature of the injuries, and coverage issues determine the scope of investigation.*

*Schedule an interview with the claimant to obtain the claimant's version of the incident as soon as possible. If an attorney represents the claimant, obtain permission from the attorney to schedule the interview.*

*Statements that address a coverage issue should be taken as soon as a coverage question has been identified. Statements provide a method to evaluate a claim based upon facts, and not upon conjecture or hearsay.*

*Investigate and determine liability for involved parties.*

*It is the responsibility of the State Farm claim staff to implement Company philosophy with respect to claim handling. Our commitment to our policyholders is to treat them like a good neighbor. We should:*
*• Listen, be fair, be open, and carry out our part of the bargain under the contract in good faith.*

*• Be familiar and in compliance with those laws and regulations that impact claims in the appropriate state, and treat policyholders consistent with requirements of the law.*
*• Explain all relevant coverages under the policy. Encourage policyholders to report all losses and avail themselves of all benefits under their policy.*
*• Diligently investigate the facts to determine if a claim is valid, reasonably evaluate the claim, and act promptly in resolving the claim. If it is necessary to deny a claim for coverage or damages, it should be done promptly and courteously, with an explanation for the decision.*
*• Make an objective evaluation of the facts and circumstances supporting our policyholders' claims. Doing so helps ensure our policyholders obtain all benefits available provided by the insurance policy.*
*• Give insureds a reasonable opportunity to comply with their responsibilities under the policy. If a claim is denied, be willing to listen to subsequent input from the insured. Complete any necessary follow-up in a timely fashion, giving due consideration to any additional findings.*

*Confirm the facts of the loss with the involved parties.*
*Casualty claim specialists are responsible for taking statements when statements are needed to support the investigation of the claim. Questions asked during a statement should be tailored to the type of claim being investigated.*

*In the initial contact, the claim handler should provide the insured/claimant with an explanation of the claim process and any applicable coverage. Statements should be taken on certain files when they will assist in the investigation. Claim management and the claim handler should consider the value of a statement on any given file.*

*Allegations of expected or intended injury against an insured often give rise to situations where the financial interests of the insurer differ from the interest of the insured. Caution must be exercised in providing a defense to the insured under the insuring agreement while at the same time seeking to activate the expected or intended exclusion against the insured. Our objective is to carefully preserve all of the insured's rights and to simultaneously uphold the integrity of the policy exclusions. To avoid any conflict, the claim file handling should be split between claim handlers or units, and separate counsel should be retained as needed.*

*The evaluation of a claim is the process of determining the value of that claim. Evaluation takes into consideration both liability and damages.*
*A. Liability*
*1. Has the investigation been completed? Have duties owed, duties breached, and proximate cause been addressed?*
*2. What is the applicable law?*
*3. Has a range of negligence been apportioned to all parties involved in the loss?*
*4. Have mitigating factors been considered (for example, aggravated circumstances, witness value)?*
*5. Are there any defenses available to the insured?*

*A claim specialist aware of a coverage question must be careful to avoid forfeiting the insured's and the Company's rights by speaking or acting improperly.*

*Each claim should be handled on its own merits, in accordance with the facts of the loss, the law, and applicable coverage…*

*Any denial or disclaimer of coverage should be supported by the Investigation and reflect concern for the interests of the insured. Prior to disclaiming coverage prior authorization should be obtained per the procedures outlined in OG 70-20 Claim Committee Reports and Procedures. If after a disclaimer of coverage it is determined we overlooked factors or information available at the time of the coverage denial, as opposed to new developments in the law, facts or allegations, it may be necessary to voluntarily reimburse the insured for defense expenses incurred as a result of the previous denial.*

*In the denial of coverage, explain to the insured the basis of the denial and invite the insured to notify the Company of any information the insured may have to the contrary. If we have misinterpreted any information supplied by the insured or if the insured has failed to disclose pertinent information, this will give the insured an opportunity to request reconsideration. Denial letters should be reviewed and approved by the TM responsible for the claim file. The TM should document the review and approval process within the claim file notes.*

*Generally, the duty to defend is interpreted broadly. In practically all jurisdictions, the Company is obligated to afford a defense to the insured if the allegations in the complaint are potentially within the coverage of the policy. Some jurisdictions confine the analysis to the four corners of the complaint, while other jurisdictions look at evidence both inside and outside the four corners of the complaint. When evaluating the duty to defend jurisdictional variations should be considered.*
*Unjustified denial of a defense may operate to waive policy provisions and limits and lead the insured to participate in settlements or stipulated judgments to the detriment of the Company. Generally, any doubts with regard to the duty to defend should be resolved in favor of the insured.*

*A. Conflict of Interest between Insured and Company*
*Upon receipt of information raising a question of coverage or policy defense, explain to the insured the nature of the coverage question and confirm in a reservation of rights letter. The insured should receive written notice the handling will continue under a reservation because either available facts or the legal interpretation of policy wording are inconclusive as it relates to coverage. Under this circumstance we should provide a defense and reserve the right to deny payment of any judgment falling outside the coverage of the policy.*
*Where a fact to be determined in the underlying case is key to a coverage question under the policy a potential conflict of interest may exist between the insured and Company.*

*II. SECTION - II INSURING AGREEMENTS*
*A. Coverage L - Personal Liability*
*The typical insuring agreement for Coverage L - Personal Liability requires any claimed bodily injury or property damage to be caused by an occurrence. Occurrence is defined in the policy definition section.*
*According to the definition an occurrence means an accident. Whether something is considered an accident under Coverage L is determined from the standpoint of the insured. When*

7

*determining the standpoint of the insured, consider the insured's knowledge and understanding of the facts, events and circumstances leading up to the loss in addition to other factors specific to the individual loss.*

*C. Accident/Accidental*

*Words not defined in the policy take on their ordinary dictionary meaning. An accident is typically considered an event that is not foreseen, expected or intended which causes injury or damage.*

*Whether something is expected or intended and whether something is the result of an accident are interrelated, some acts are simply not an accident. Examples may be molestation, breach of contract, discrimination, and termination of employment. In other words, when an insured does exactly what the insured intends to do, and has specific intent to cause an injury or property damage, or it is reasonably foreseeable, it is not an accident.*

*Ill. THE DUTY TO DEFEND*
  *A. Legal Interpretation*
     *The duty to defend an insured against a civil suit is considered by many courts to be separate from, and broader than, the obligation to indemnify the insured for a liability judgment. The general rule is the insurer's duty to defend is determined from the allegations in the complaint. In some jurisdictions, however, the insurer may be required to provide a defense if during the investigation additional facts are uncovered that might bring the action within policy coverage. Some jurisdictions may require the insurer to defend if the complaint could conceivably be amended so as to bring the allegations within coverage.*
  *B. Actions for Declaratory Judgment*
     *Where it appears that a declaratory action to determine coverage will decide many of the same issues included in the tort action, the court generally will not rule on a declaratory action until after the tort action is complete. We should defend the insured in these instances under a Reservation of Rights until the appropriate time for filing a Declaratory Relief Action. In some situations it may not be appropriate to file a declaratory judgment action at any time. When needed, retain separate counsel on the Company's behalf to address the coverage issues.*

*IV. SECTION II – EXCLUSIONS*

*A. Expected or Intended Injury Damage Exclusion*

*Coverage L and M do not apply to bodily injury or property damage when it is expected or intended.*

*In states where the phrase "an insured" is used in the exclusionary language, it should be interpreted to mean the insured.*

*Conduct by one insured which excludes that person from coverage will not exclude any other insured unless this other insured's conduct is also within the parameters of this exclusion.*

  ■ *Insured's Specific Intent*

*All courts have held that injury or damage is within the exclusion if the insured had the specific intent to cause the injury or damage which actually occurred.*

  ■ *Consequences of Insured's Actions*

8

*Many courts have found the requisite intent to do harm if, due to the nature of the insured's action, the resulting damage or injury was foreseeable or at least reasonably probable. This is particularly true where the insured is operating an inherently dangerous instrumentality, such as firing a gun in the general direction of a person or crowd. Even though the insured may not have intended to hit anyone, he or she may be held responsible for the natural consequences of the act.*

*Subjective Intent of the Insured*
*Some courts have found that whether the resultant injury or damage was expected or intended is dependent on the subjective intent of the insured. Instead of being based on what a reasonably prudent person would have expected or intended, the court focuses on what that particular insured expected or intended. This makes it more difficult to infer an intent to injure based on the natural consequences of a particular act. However, an insured's statement of subjective intent is still subject to a reasonable interpretation of his or her actions.*

*In addition to the guidance outlined in IV. A. above, the following analysis would be applicable under the FP 7955 Homeowner series:*
*a. Unforeseeable Harm from lnsured's Actions*
*Harm that is wholly unanticipated or unforeseeable may result from the intentional conduct of a person. In this circumstance the expected or intended exclusion may not apply.*

*[C] Expected or Intended Injury/Willful and Malicious Acts*
> *South Carolina applies a two-part test to determine whether an expected or intended injury exclusion applies: first, whether the act causing the injury was intentional, and second, whether the results of the act were intended. Vermont Mutual Ins. Co. v. Singleton, 446 S.E.2d 417 (S.C. 1994) (exclusion did not apply because although the insured intended to strike the plaintiff, he intended to protect himself rather than injure the plaintiff).*

Several recent South Carolina district court cases previously addressed some of the issues involved in this matter. Those cases and the issues they addressed are as follows:

> State Farm Fire and Casualty Company v. Blanton, 2015 WL9239788 (D.S.C. Dec. 17, 2015) which held that *the simple filing of a declaratory judgment action normally may not constitute breach of contract or bad faith, the complete factual basis for these claims is unclear and it is also unclear whether any improper purpose was involved. State Farm's motion to dismiss or for judgment on the pleadings is denied as to the filing of the declaratory judgment action.*

> *South Carolina's interpretation of the "expected and intended" exclusion puts it within the minority of jurisdictions. 3 Law and Prac. of Ins. Coverage Litig. § 34:8. The exclusion "requires a comparison of the nature of the injuries inflicted with the intentions and expectations of the defendant as shown by the defendant's expressions of intent and the*

9

*surrounding facts."*  Dunes West Residential Gold Properties, Inc. v. Essex Ins. Co., 2006 WL 1806009 (D.S.C. June 29, 2006).

*"Intent is not an essential element of assault and battery."*  Mellen v. Lane, 377 S.C. 261, 659 S.E.2d 236, 245 (Ct. App. 2008).

State Farm Fire and Casualty Company v. Mitchell, 2016 WL5661690 (D.S.C. Sept. 30, 2016) involved an altercation in which *Defendant Mitchell punched Defendant Harry in the face, allegedly resulting in substantial damages to Harry. Defendant Mitchell asserts he acted in self-defense. The court held that, in South Carolina, an "insurer's duty to defend is separate and distinct from its obligation to pay a judgment rendered against an insured."* City of Hartsville, *382 S.C. 535 at 544 (citing* Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha, *269 S.C. 183, 186 (1977)). "Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services," and can be triggered absent an ultimate finding of liability.* City of Hartsville, *382 S.C. at 544 (citing* Sloan Const. Co., *269 S.C. at 187–88)*

*In the context of insurance coverage cases, the South Carolina Supreme Court in Singleton enunciated a two-prong analysis courts employ to determine the validity and applicability of an "intentional act" exclusion to a homeowner's insurance policy: first, the act causing the loss must be intentional; and 2) the results of the act must be intentional.* Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, *615 S.C. 5, 8 (1994).*

*In short, the allegations in the Complaint as well as the additional information known to Plaintiff State Farm through deposition testimony, this Court finds that a reasonable jury could conclude that Defendant Mitchell acted in self-defense. If Defendant Mitchell acted in self-defense, the intentional act exclusion does not apply because the second prong of intentionality as set forth in* Singleton *is not satisfied. See* Singleton, *446 S.E.2d at 420. Accordingly, a possibility of coverage under the Policy exists sufficient to trigger Plaintiff State Farm's duty to defend under the Policy.*

Allstate Insurance Co. v. Ingraham, 2017 WL 976301 (D.S.C. March 14, 2017) held that *the possibility of coverage triggering an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer.* City of Hartsville, *677 S.E.2d 574, 578 (S.C. 2009) (citing* USAA Prop. & Cas. Ins. Co. v. Clegg, *661 S.E.2d 791, 798 (S.C. 2008)).* The court in Allstate also addressed the definition of "accident".  See also Mitchell at page 3.

10

### III. Opinions of Expert

The following opinions are based on the materials reviewed in preparing this report. They are also based on the knowledge and experience gained during my career as a claims adjuster, claims supervisor and claims manager as well as from my experience practicing law. All opinions are given to a reasonable degree of professional certainty.

Insurance companies are under a duty of good faith and fair dealing obligating them to treat their customers fairly and honestly. An insured can recover under a theory of bad faith claims handling who unreasonably failed to provide coverage, misrepresented facts and the coverages available to an insured, or failed to thoroughly investigate the insured's claim before denying coverage.

<u>Denial of Coverage</u>

Questions of coverage, where uncertain, are generally resolved in favor of the insured. This is particularly true where there is a question regarding a duty to defend; in such an instance, the company has the ability to provide a defense subject to a reservation of rights in order to fully investigate prior to denying the claim.  Where there are questions of fact in the underlying case which bear on coverages of defense and indemnity under the policy, it is improper for the company to unilaterally decide those facts adverse to the interests of its insured, deny coverage, or to file a premature declaratory judgment action against the insured.  It is particularly egregious for a company to determine facts in dispute in a manner that denies coverage, and prior to a finding of fact by the Court, where it fails to conduct a thorough investigation of the coverage claim and fails to consider all known information.

State Farm unjustifiably denied coverage to Lang. The company did not follow its own guidance and policies for the handling of South Carolina liability claims. State Farm's

11

representatives knew or should have known South Carolina applies a two-part test to determine whether an expected or intended injury exclusion applies. First, whether the act causing the injury was intentional. Second, whether the results of the act were intended. Before denying coverage, the company never gave consideration to Lang's contention he was acting in self-defense. The dispute over the interpretation of the surveillance video and words exchanged by the parties was a question of fact for the judicial factfinder. The company also never gave consideration to Lang's contention that he did not intend to cause the damages alleged by Patterson. The company had no basis to determine the disputed question of fact as to whether Lang intended the injuries alleged by Patterson.

State Farm's representatives knew or should have known what South Carolina law held regarding issues similar to the ones in the subject litigation. For instance, the company knew or should have known that allegations of assault and battery in South Carolina do not necessarily mean that the insured acted with intent under South Carolina law.

In its correspondence to Lang denying the claim, State Farm never explained to Lang its interpretation of the surveillance video, which conflicted with Lang's explanation of the video. It never informed Lang that Whiteside's interpretation of the video was the basis for its denial of the claim, and it allowed Whiteside to remain the claims specialist assigned to the file after the conflict of interest arose. Whiteside should have been replaced with a management level claims specialist without a conflict of interest to Lang. Coverage investigation should have been conducted independent of the handling of the liability claim and should have thoroughly investigated all facts which could support coverage and determined and applied the law of South Carolina.

Investigation

State Farm failed to conduct a proper investigation before it denied the claim. As discussed above, the company via its claims specialist only interviewed Lang as part of its investigation, without recording or transcribing the interview for review by management. The company never interviewed Patterson, Lang's girlfriend, or any officer from the Summerville Police Department. The thoroughness and findings of the claims specialist's investigation was not properly assessed by management. Had the company interviewed any police officers it would have learned of the existence of the body cam wherein Patterson's friend, James Shaw (whose nickname is "Big Bear"), states "me and him [Patterson] were sitting there talking, I'm getting my tab, I'm going to leave, he [Patterson] goes 'these guys over here keep bumping into me, we're going to get in a fight if they keep (expletive deleted) messing with me.' And the next thing I know that guy [Lang] freakin' slaps the t-total (expletive deleted) out of him [Patterson]." The statement from James Shaw would have reinforced Lang's contention he was acting in self-defense. The statement from James Shaw was obtained by retained defense counsel and reported to State Farm prior to its filing of the declaratory judgment action.

Information Provided to Insured

State Farm breached the standard of good faith and fair dealing by providing misleading information with respect to coverage when it provided its insured a copy of a policy which contained language different from what was in contained in the policy issued to Lang. State Farm provided false information to Lang by asserting he had no coverage, including the duty to defend, in its multiple coverage denial letters. State Farm provided false information to Lang by asserting to him that "Assault and battery are intentional torts and do not constitute an "occurrence."" and therefore that he had no coverage for these claims, without any explanation

13

or consideration of Lang's assertion of self-defense. State Farm wrongfully represented to Lang the nature of the coverage under form FP-7955 as it pertains to South Carolina law, its interpretation of the intentional acts exclusion, and allegations against the insured of assault and battery in the context of an assertion of self-defense. State Farm never explained to Lang its conflict of interest in having Whiteside determine questions of fact adverse to Lang's coverage while remaining the point of contact on the liability file. The company did not accurately explain available coverage under the policy or adequately explain State Farm's specific reasons for denying coverage.

Filing of Declaratory Judgment

As discussed in the case law, the simple filing of a declaratory judgment action normally may not constitute breach of contract or bad faith. However, it appears State Farm did not give proper consideration to its own guidance and policies before filing the declaratory judgment action in this matter. Those policies and guidelines provide in part as follows: "Where it appears that a declaratory action to determine coverage will decide many of the same issues included in the tort action, the court generally will not rule on a declaratory action until after the tort action is complete. We should defend the insured in these instances under a Reservation of Rights until the appropriate time for filing a Declaratory Relief Action. In some situations it may not be appropriate to file a declaratory judgment action at any time." The company failed to follow coverage investigation procedures prior to the filing of the declaratory judgment action. For instance, at the time State Farm initiated its declaratory judgment action, it had not interviewed all available witnesses and it did not give consideration to a report from defense counsel regarding the statements of James Shaw on the police body worn camera. The coverage department did not independently and thoroughly analyze the claims file and investigation,

primarily handled by Whiteside, to ensure that all pertinent facts were investigated, documented, and that the law of South Carolina was accurately considered and applied.

Causation

Had State Farm conducted a complete investigation into coverage issues, independent of the disputed factual findings of Whiteside, and applied the law of South Carolina to the claim, it most probably would have determined that Lang was owed a defense and would not have denied his claim or filed the declaratory judgment action.  Its actions and inactions in so doing violated its own policies and South Carolina law pertaining to the coverage and claim.

**IV.     Exhibits.**

No exhibits are anticipated at this time other than original documents to what have been cited in this report from the documents produced in the case.  I reserve the right to incorporate by reference the testimony from any depositions that may be taken in the case.

**V.      A copy of the undersigned's CV is attached.  No publications authored in last 10 years**.

**VI.     During the previous four years, the undersigned testified at trial or by deposition in the following cases:**

> *Porthemos Curry v. Carolina Insurance Group*
> Richland County Court of Common Pleas
>
> *Jennifer Fanning, et al v. Ohio Security Insurance Company*
> U.S. District Court, Charleston Division
>
> *Betti Abrecht and William Abrecht v. LM Insurance Corporation*
> U.S. District Court, Orangeburg Division
>
> *Trumbull Insurance Company v. Phillip Ray Causey and Daniel Eric Knight*
> U.S. District Court, Charleston Division
>
> *Linda Hill, as Personal Representative of the Estate of Thomas Hill, deceased, v. Tudor Insurance Company and Western World Group*
> U.S. District Court, Anderson Division
>
> *Latasha Steplight v. Progressive Northern Insurance Company*

U.S. District Court, Charleston Division

**VII.    The undersigned is providing expert witness services at $300.00 an hour.**

**VII.    Reservation.**

The undersigned reserves the right to revise his opinions and amend his report based on any additional documents provided by parties in this case and based on any depositions that are taken. The undersigned also reserves the right to amend his report to respond to any and all expert opinions rendered by experts for State Farm.

*Thomas H. Hesse*
Thomas H. Hesse

January 7, 2022

# THOMAS H. HESSE

1629 Meeting Street, Suite A
Charleston, S.C. 29405
(Office) 843.727.2250

## PROFESSIONAL EXPERIENCE

*Austen and Gowder, LLC*
2017 – present     Attorney at Law
    Litigator specializing in insurance defense and insurance coverage matters

*Pratt-Thomas Walker, P.A.*
2006 to 2016     Attorney at Law
    Litigator specializing in insurance defense and insurance coverage matters.

*Knight Law Firm*
2002 to 2006     Attorney at Law
    Litigator specializing in personal injury accident cases.

*Pratt-Thomas, Pearce, Epting and Walker*
1992 to 2002     Attorney at Law
    Litigator specializing in insurance defense and insurance coverage matters.

*Unisun Insurance Company (formerly American Mutual Fire Insurance Co.)*
1989 to 1992     *Part-time Employee while attending law school*
    Assisted in litigation matters in Claims Department.

*American Mutual Fire Insurance Co*
1987 to 1989     *Litigation Manager/Head of Litigation Department*
    Responsible for over 1,000 claim files in litigation including supervision of three litigation examiners and one salvage and subrogation examiner.

1982 to 1987     *Litigation Manager*
    In addition to directing the activities of several hundred litigation files, responsible for overseeing the operations of four branch claims offices in South Carolina.

1979 to 1982     *Litigation Supervisor*
    Responsible for supervision of litigation files originating in North Carolina and South Carolina and all casualty claims in South Carolina.

*Atlanta Casualty Insurance Company,* Atlanta, GA
1977 to 1979     *Claims Manager*
    Managed the Home Office Claims Operation of automobile insurance company including supervising the activities of 14 adjusters and 6 clerical personnel.

*American Mutual Fire Insurance Co.*
1972 to 1977     *Staff Adjuster*
    Multi-line claims adjuster in Atlanta Branch Claims Office

1971 to 1972     *Adjuster Trainee*
    Charleston Branch Claims

## EDUCATION

*University of South Carolina Law School,* Columbia, S.C., J.D., 1991

*Woodrow Wilson College of Law,* Atlanta, GA. J.D., 1976

*The Citadel,* Charleston, S.C. B.S. in Business Administration, 1971

## PROFESSIONAL EDUCATION

- 2007 Magistrate and Municipal Judge Orientation School

- 1994 Completed Dispute Management, Inc. (DMI) training requirements for inclusion on the South Carolina Council for Mediation and Alternative Dispute Roster of Civil Mediators

- 1988 Completed College of Insurance Management Program

- 1985 Continuing Professional Development Award from American Institute of Property and Liability Underwriters

- 1983 Completed Trident Chamber of Commerce Leadership Development Program

- 1982 Received Chartered Property and Casualty Underwriter (CPCU) designation from the American Institute for Property and Liability Underwriters

- 1973 Received Certificate in General Insurance from Insurance Institute of America

## PROFESSIONAL ORGANIZATIONS

South Carolina State Bar

State Bar of Georgia

Charleston County Bar Association

South Carolina Summary Court Judges Association

Claims Management Association of South Carolina (former member; held positions of President, Vice President, Secretary and Member of Board of Directors; named Claims Manager of the Year in 1987)

South Carolina Claims Association (former member)

Charleston Claims Association (former member)

## MISCELLANEOUS PROFESSIONAL ACTIVITIES

Municipal Court Judge, Town of Mount Pleasant, 2006---present

Certified South Carolina Circuit Court Arbitrator

Certified South Carolina Circuit Court Mediator

Licensed South Carolina Insurance Adjuster

Special Municipal Court Judge, City of Goose Creek 1995

Governor Appointee to Joint Legislative Automobile Liability Insurance Study Committee 1987 to 1989

Panelist, Charleston Inter-Company Arbitration Committee 1982 to 1987

Served on Faculty of South Carolina Bar's Continuing Legal Education Program